**IN THE COURT OF APPEALS OF IOWA**

No. 21-1833
Filed July 20, 2022

**IN THE INTEREST OF M.L.,**
**Minor Child,**

**A.L., Mother,**
    Appellant.
_____

    Appeal from the Iowa District Court for Polk County, Kimberly Ayotte, District Associate Judge.

    A mother appeals the termination of her parental rights. **AFFIRMED.**

    Sarah E. Dewein of Cunningham & Kelso, P.L.L.C., Urbandale, for appellant mother.

    Thomas J. Miller, Attorney General, and Diane Murphy Smith, Assistant Attorney General, for appellee State.

    Erin Mayfield of Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.

    Considered by Bower, C.J., and Schumacher and Ahlers, JJ.

**BOWER, Chief Judge.**

A mother appeals the termination of her parental rights to her child, challenging the grounds for termination and claiming she should have been granted a six-month extension to seek reunification and termination was not in the child's best interests. Because we discern no reason to disagree with the juvenile court's termination-of-parental-rights order, we affirm.

M.L. came to the attention of the Iowa Department of Human Services (DHS) in February 2021 after testing positive for amphetamine and methamphetamine at birth. Following the child's birth, the mother was arrested on felony robbery charges. She admitted to illegal drug use while pregnant. She did not obtain prenatal care. The mother and DHS agreed to a plan where the child would be placed in the care of the maternal grandmother.

On March 11, the juvenile court entered an order confirming the removal of the child from the mother's custody. The mother provided information about the putative father. The removal continued following an uncontested hearing held on March 17.

On May 7, the child was adjudicated as a child in need of assistance (CINA) under to Iowa Code section 232.2(6)(c)(2), (n), and (o) (2021). The mother remained in jail. Disposition was entered on June 15 with the child remaining with the maternal grandmother under DHS supervision.

On September 3, a permanency order was filed directing the State to file a petition to terminate parental rights.[1]

On September 9, the mother pleaded guilty to felony theft and extortion. She received a fifteen-year suspended sentence and, on September 10, was released on probation under the condition she obtain substance-abuse and mental-health evaluations and follow recommendations for treatment. DHS received a report the mother absconded to Nebraska. The mother told DHS she was staying in a hotel, and then she ceased communication with DHS.[2]

On September 16, the child was placed in the custody of a maternal uncle and his wife. There had been ongoing concerns the maternal grandmother was allowing the mother to live with her despite DHS's clear expectation the mother would not live with the child.

The mother participated in a substance-abuse evaluation on September 20, which recommended participation in intensive outpatient treatment consisting of weekly groups and individual sessions totaling no less than nine hours of treatment a week. The mother was diagnosed with a severe methamphetamine and cannabis dependency in early remission in a controlled environment. The evaluator indicated the mother has a significant history of multiple relapses, criminal behavior, mental-health struggles, and past ability to be sober only while

---

[1] DHS attempted, but the putative father failed to comply with paternity testing. There is an active warrant for his arrest. He is in noncompliance with his probation following a domestic-violence charge, had a positive drug screen for methamphetamine, and was unsuccessfully discharged from substance-use disorder treatment.

[2] DHS had conflicting reports the mother was staying at a hotel, in the grandmother's car, and at the grandmother's home after her release from jail.

in a controlled environment. The mother submitted a negative drug screen on October 29 and moved into a sober-living house on November 1. She submitted another negative drug screen on November 2.

The termination of parental rights hearing was held November 3. The mother testified she had not used any drugs since being released from jail, was residing in a sober-living facility, had started substance-abuse and mental-health programming in October, and was looking for employment. She stated the child could join her in the sober-living house and requested an extension of time to show she was able to maintain sobriety and provide an appropriate home for M.L.

The mother acknowledged she has used methamphetamine and other illegal substances for many years. She had been sleeping on others' couches for several months before giving birth to M.L. She acknowledged her last long-term employment was in 2012 or 2013. The mother testified she only entered the sober-living house because it was required by her probation officer.

The social worker in charge of the family's case testified the mother was unable to participate in services while in jail due to COVID-19 protocols. She stated the services the mother was scheduled to begin were appropriate. However, she expressed concerns about the mother's motivation to change, noted the similar circumstances surrounding a prior termination of the mother's parental

rights,[3] and testified about issues that occurred during in-person visits.[4] The social worker did not recommend an extension of time be granted to the mother.

The child's guardian ad litem (GAL) recommended termination of the mother's rights. The GAL, like the social worker, noted the mother's significant history of substance abuse and previous juvenile court involvement and services. She stated the mother's testimony demonstrated a lack of insight into the impact her mental health, substance abuse, and domestic violence[5] have on her children

---

[3] The mother had previously been involved with juvenile court services in relation to an older child. The 2016 termination-of-parental-rights ruling shows her circumstances have not changed much:

> Since her removal on February 4, 2015, [the child] has remained in foster care, and the parents have not progressed past fully supervised interactions. . . .
>
> . . . .
>
> [The mother] initially also did not consistently participate in recommended services. On August 17, 2015, however, she entered inpatient treatment at the House of Mercy. This action prompted the court to grant a six-month extension for reunification efforts on September 25, 2015. Three days later, [the mother] relapsed on methamphetamine in a Walmart bathroom while on a pass from her inpatient treatment program. She then returned to the House of Mercy and began making progress. Unfortunately, she began to struggle again in January, 2016, and left the program on February 25, 2016. She did not follow up with any outpatient treatment, and has not consistently engaged in mental health treatment.

[4] After the mother's release from jail in September 2021, she was offered weekly supervised interactions with M.L. but missed her first one. The second visit ended early as the mother would not take redirection from the child's custodian, began yelling and cussing, and would not deescalate. During her third interaction, the mother handed the child off to the Court Appointed Special Advocate stating she had to use the restroom, then she spent ten to fifteen minutes away and left shortly thereafter. During her fourth interaction, the mother did not engage with M.L.

[5] The mother did testify one of her prior intimate relationships involved domestic violence. She also testified about relationship violence that appears connected to her lifestyle and the use of illegal substances. Once, a man insulted her and when she responded, he hit her several times in the head with a fire extinguisher. The mother testified another man believed she had stolen his car and hit her in the head with a steel bar. And, the events leading to her most current legal

and herself. The GAL found it was not "reasonably likely that [the child] can safely be returned to her within six months or that an extension is in his best interest." She asserted the child "needs and deserves permanency and that termination of parental rights and adoption" by those with whom the child was placed was in his best interests.

The juvenile court terminated the mother's parental rights pursuant to Iowa Code section 232.116(g), (h), and (*l*).

The mother appeals, claiming the grounds for termination have not been proved by clear and convincing evidence because she should be granted a six-month extension considering her lack of access to services while in jail and termination of her parental rights is not in the best interests of the child.

We review termination proceedings de novo. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination. Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence." *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015) (internal citation omitted). Our paramount concern is the child's best interests. *In re L.T.*, 924 N.W.2d 521, 528 (Iowa 2019).

In determining whether termination of parental rights is authorized, we consider whether: (1) grounds for termination have been established, (2) termination is in the child's best interests, and (3) the parent has proved a

---

involvement involved her accompanying a man to a woman's home to retrieve the man's money and drugs and he "pistol-whipped" the woman. The mother testified the woman "deserved it."

permissive exception weighing against termination. Iowa Code § 232.116(1)-(3); *In re A.S.*, 906 N.W.2d 467, 472–73 (Iowa 2018). "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012).

We focus on termination under section 232.116(1)(h), which provides a parent's rights may be terminated if the court finds: (1) the child is three years of age or younger, (2) the child has been adjudicated a CINA, (3) the child has been removed from the physical custody of their parent for six of the last twelve months, and (4) there is clear and convincing evidence that the child cannot be returned to the parent's custody at the present time. "[A]t the present time" means at the time of the termination hearing. *See D.W.*, 791 N.W.2d at 707.

The mother concedes the child is under three years old and has been adjudicated CINA. There is no dispute the child has been removed from her physical custody since March 2021, which was eight months at the time of the termination hearing. There is clear evidence supporting section 232.116(1)(h)(1)-(3).

The mother's challenge to paragraph 4 is intertwined with her claim an extension should have been granted because she had no access to DHS services while in jail during the COVID-19 restrictions. If this was the mother's first involvement with juvenile court, the claim might carry a bit more weight. But evidence of a parent's past performance "may be indicative of the quality of the

future care that parent is capable of providing." *In re B.H.A.*, 938 N.W.2d 227, 233 (Iowa 2020) (citation omitted).

To grant an extension of time for reunification, the court must "enumerate the specific factors, conditions, or expected behavioral changes" providing a basis to determine the child will be able to return to the parent at the end of the additional six months. Iowa Code § 232.104(2)(b). Stated differently, we must find that the need for removal will no longer exist at the end of the extension. We are unable to reach such a conclusion here. Given the mother's long history of substance abuse, her limited ability to refrain from drug use only in a very controlled environment, and her past lack of follow-through even when her relationship with her child was on the line, we are unconvinced the child could be returned safely to her care in an additional six months.

The mother's testimony shows a lack of insight into her mental-health issues, substance-abuse issues, and the impact those issues have on her ability (or inability) to provide consistent, safe parenting to her child. The mother's late and minimal efforts just before the termination hearing are a good first step, but she has a long road to travel. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) ("Once the limitation period lapses, termination proceedings must be viewed with a sense of urgency."). There is clear and convincing evidence the child could not be safely returned the mother's custody at the time of the termination hearing or in the foreseeable future and, consequently, termination of the mother's parental rights is supported under Iowa Code section 232.116(1)(h).

Finally, the mother combines her best-interests and permissive-exceptions arguments, contending the juvenile court "should have acknowledged the significant steps [the mother] has taken in the recent months and looked to provide M.L. the opportunity for a longstanding relationship with [the] mother, a connection that is unquantifiable by the courts, when there is an exception that allows this relationship an opportunity to exist." Perhaps the efforts the mother has taken are "significant" in her estimation. Unfortunately, they are insufficient to show termination is not in the child's best interests. The mother has failed in her burden[6] to prove an exception exists that countermands our conclusion that termination of parental rights and adoption can best provide for the child's safety, "long-term nurturing and growth," and "physical, mental, and emotional condition and needs." Iowa Code § 232.116(2); *see A.S.*, 906 N.W.2d at 475 (noting the exceptions are "permissive, not mandatory"). We affirm the termination of the mother's parental rights.

**AFFIRMED.**

---

[6] *See A.S.*, 906 N.W.2d at 476 ("[O]nce the State has proven a ground for termination, the parent resisting termination bears the burden to establish an exception to termination under Iowa Code section 232.116(3).").